# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SOUTH LAFOURCHE BANK & TRUST CO.,** **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-2880** |
| **M/V NOONIE G, *in rem*, ET AL.,** **Defendants** | **SECTION: "E"** |

## ORDER AND REASONS

Before the Court is a motion to dismiss for lack of subject-matter jurisdiction filed by Defendants[1] and a motion for summary judgment filed by the Plaintiff.[2] Both motions are opposed. For the following reasons, the motion to dismiss for lack of subject-matter jurisdiction is **DENIED** and the motion for summary judgment is **GRANTED IN PART** and **DEFERRED IN PART**.

## BACKGROUND

Guilbeau Boat Rentals, LLC owns the M/V NOONIE G.[3] Todd Guilbeau, on behalf of Guilbeau Boat Rentals, LLC, executed a first preferred maritime mortgage in the amount of $900,000 on the M/V NOONIE G (the "mortgage")[4] and a first preferred ship mortgage note (the "preferred ship mortgage note") in the amount of $900,000 on August 14, 2007.[5] The preferred ship mortgage note was signed by Guilbeau Boat Rentals, LLC and endorsed in blank by its member/manager, Todd Guilbeau.[6] The preferred ship

---

[1] R. Doc. 60.
[2] R. Doc. 59.
[3] R. Doc. 1 at 2.
[4] R. Doc. 1-4.
[5] R. Doc. 1-3.
[6] *Id.*

mortgage note was pledged to secure a line of credit up to a maximum principle amount of $900,000.[7]

On March 27, 2014, Guilbeau Boat Rentals, LLC executed a promissory note for $642,283.09 (the "promissory note") payable to the order of South Lafourche Bank and Trust Company (the "Bank").[8] The Bank contends the debt represented by the promissory note is secured by the mortgage on the M/V NOONIE G and that the mortgage qualifies as a preferred ship mortgage.[9] The Bank alleges Guilbeau Boat Rentals, LLC and Todd Guilbeau have failed to pay the debt owed to the Bank.[10] According to the Bank, no payments have been made by any of the Defendants, and there now remains due $639,519.60 plus interest on the promissory note.[11] No payment on the principal has been made since August 26, 2014.[12]

On July 26, 2016, Allied Shipyard, Inc. filed a complaint in intervention, alleging it provided to the M/V NOONIE G materials, repair services, and machinery in the sum of $120,380.73, which remains due despite amicable demand by Allied upon Guilbeau Boat Rentals, LLC.[13]

---

[7] R. Doc. 75-1. The pledge agreement references the first preferred marine mortgage note in the amount of $900,000.

[8] R. Doc. 1-2. The promissory note bears an interest rate of 6.71% annually and is to be paid in 23 monthly installments of $9,605.91, with the final payment due on March 26, 2016. *Id.* The promissory note was signed by Guilbeau Boat Rentals, LLC and by its member/manager, Todd Guilbeau. *Id.* The promissory note lists the mortgage as security, and specifically identifies the mortgage as a "Preferred Ship Mortgage" for $900,000 on the M/V NOONIE G. *Id.* at 2.

[9] R. Doc. 1 at 4. The Court notes the Defendants intended the mortgage to be a preferred ship mortgage under the Ship Mortgage Act. The Certification of the Meeting of the Members of Guilbeau Boat Rentals, LLC on August 14, 2007, which is attached to the First Preferred Mortgage, states that Todd Guilbeau, as a member of Guilbeau Boat Rentals, LLC, effectuates "the issuance of a *First Preferred Ship Mortgage* to South Lafourche Bank & Trust Company, to be secured by the M/V NOONIE G in the sum of Nine Hundred Thousand ($900,000) Dollars." R. Doc. 1-4 at 6 (emphasis added). The certification is signed by Todd Guilbeau. *Id.*

[10] R. Doc. 1 at 6.

[11] *Id.*

[12] *Id.*

[13] R. Doc. 20.

On January 30, 2017, the Bank filed a motion for summary judgment, asking the

Court to enter a judgment as follows:

A. In favor of South Lafourche Bank & Trust Company and against the M/V NOONIE G, Official Number 620862, its engines, tackle, apparel, etc., *in rem*, Guilbeau Boat Rentals, LLC, and Todd Guilbeau, *in personam*, in solido, in the sum of Six Hundred Thirty Nine Thousand Five Hundred Nineteen and 60/100 ($639,519.60) Dollars together with interest at the rate of Six and 71/100 (6.71%) per cent per annum from September 30, 2015, until paid, plus attorney's fees and all costs of these proceedings.

B. In favor of South Lafourche Bank & Trust Company and against the defendant, Anthony Guilbeau, Jr., in the sum of One Hundred Twenty-Five Thousand ($125,000.00) Dollars, together with legal interest from date of judicial demand as well as all costs of these proceedings, said judgment to be in solido with the judgment rendered against the M/V NOONIE G, *in rem*, and Guilbeau Boat Rentals, L.L.C., Todd Guilbeau and Lorraine G. Guilbeau, *in personam*.

C. In favor of South Lafourche Bank & Trust Company and against the defendant, Lorraine G. Guilbeau, in the sum of One Hundred Twenty-Five Thousand ($125,000.00) Dollars, together with legal interest from date of judicial demand as well as all costs of these proceedings, said judgment to be in solido with the judgment rendered against the M/V NOONIE G, *in rem*, and Guilbeau Boat Rentals, L.L.C., Todd Guilbeau and Anthony Guilbeau, Jr., *in personam*.

D. Declaring that the first preferred mortgage dated August 14, 2007 is a valid and subsisting lien upon the Oil Screw M/V NOONIE G, Official Number 620862, her engines, tackle, apparel, etc., and all other necessaries thereunto belonging and appertaining as described in said preferred mortgage described prior and superior to the interests, liens or claims of any and all persons, firms or corporations whatsoever.

E. Directing that the M/V NOONIE G, Official Number 620862, its engines, tackle, apparel, *in rem*, be sold by the United States Marshal of this District to the highest bidder, free and clear of all liens and pre-existing claims on said vessel.

F. Declaring that, in the event that South Lafourche Bank & Trust Company is the successful bidder at the sale of the M/V NOONIE G, Official Number 620862, that South Lafourche Bank & Trust Company be allowed to substitute its mortgage up to the value of that mortgage, in lieu of payment for the cash purchase price at the U.S. Marshal's sale; South Lafourche Bank & Trust Company to pay, in the event that it is the successful bidder, the U.S. Marshal's commission in connection with the sale.

G. Declaring that all claims against the M/V NOONIE G, Official Number 620862, except those of South Lafourche Bank & Trust Company be defaulted and barred by laches.

H. For such other and further relief as the Court deems just and equitable.

In its motion for summary judgment, the Bank argues the mortgage is a valid preferred ship mortgage under the Ship Mortgage Act. The Defendants and the Intervenor filed oppositions to the motion for summary judgment.[14]

On February 7, 2017, the Defendants Guilbeau Boat Rentals, LLC (individually and as owner of the M/V NOONIE G) and Todd Guilbeau, Anthony Guilbeau, Jr. and Lorraine Guilbeau (collectively, "Defendants") filed a motion to dismiss for lack of subject-matter jurisdiction, arguing the mortgage is invalid under Louisiana law, and therefore cannot be a preferred ship mortgage under the Ship Mortgage Act.[15] On April 27, 2017, the Bank filed its opposition to the Defendants' motion to dismiss.[16] The Defendants filed a reply memorandum,[17] to which the Bank filed a sur-reply memorandum.[18]

On May 19, 2017, the Court heard oral argument on both motions.[19]

## LEGAL STANDARDS

### I. <u>Motion to Dismiss for Lack of Subject-Matter Jurisdiction</u>

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims."[20] A motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) challenges a federal court's subject-matter jurisdiction.[21] Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction

---

[14] R. Docs. 63, 73.
[15] R. Doc. 60.
[16] R. Doc. 75.
[17] R. Doc. 79.
[18] R. Doc. 82.
[19] R. Doc. 83.
[20] *In re FEMA Trailer Formaldehyde Products Liab. Litig. (Mississippi Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012).
[21] *See* Fed. R. Civ. P. 12(b)(1).

when the court lacks the statutory or constitutional power to adjudicate the case."[22] "Lack of subject-matter jurisdiction may be found in the complaint alone, the complaint supplemented by the undisputed facts as evidenced in the record, or the complaint supplemented by the undisputed facts plus the court's resolution of the disputed facts."[23] "When, as here, grounds for dismissal may exist under both Rule 12(b)(1) and Rule 12(b)(6), the Court should, if necessary, dismiss only under the former without reaching the question of failure to state a claim."[24]

## II.  **Summary Judgment**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[25] "An issue is material if its resolution could affect the outcome of the action."[26] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[27] All reasonable inferences are drawn in favor of the nonmoving party.[28] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[29]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would

---

[22] *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks and citation omitted).
[23] *In re FEMA*, 668 F.3d at 287.
[24] *Valdery v. Louisiana Workforce Comm'n*, No. 15-01547, 2015 WL 5307390, at *1 (E.D. La. Sept. 10, 2015).
[25] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[26] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[27] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[28] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[29] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).

'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[30] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[31]

If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[32] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[33] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to

---

[30] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

[31] *Celotex*, 477 U.S. at 322–24.

[32] *Id*. at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986), and requiring the movants to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).

[33] *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

supporting evidence already in the record that was overlooked or ignored by the moving party."[34] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[35] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[36] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[37]

## LAW AND ANALYSIS

The Bank's basis for asserting federal admiralty jurisdiction in this matter is that the mortgage is a preferred ship mortgage under the Ship Mortgage Act.[38] In their Rule 12(b)(1) motion to dismiss, Defendants contend this Court does not have subject-matter jurisdiction to hear this matter because the mortgage is not a preferred ship mortgage.[39] Defendants argue the Ship Mortgage Act does not provide a basis for jurisdiction because the financing documents on which the Bank relies are structured in the form of a collateral chattel mortgage, which the Defendants contend is no longer a valid instrument for mortgaging movable property under Louisiana law.[40] Defendants assert that, if the Bank's

---

[34] *Celotex*, 477 U.S. at 332–33.
[35] *Id.*
[36] *Celotex*, 477 U.S. at 332–33, 333 n.3.
[37] *Id.*; *see also First National Bank of Arizona*, 391 U.S. at 289.
[38] 46 U.S.C. § 31301, *et seq.*; R. Doc. 1 at 2.
[39] R. Doc. 60.
[40] *Id.* at 3.

mortgage is not valid under Louisiana law, it is not a valid preferred ship mortgage under the Ship Mortgage Act.[41] If the Bank's mortgage is not a valid preferred ship mortgage for the purposes of the Ship Mortgage Act, this Court has no federal question subject-matter jurisdiction.

The Bank's motion for summary judgment raises the same issue, as the Bank seeks a declaration that the mortgage is a valid preferred ship mortgage, enforceable under the Ship Mortgage Act.[42] Because both motions raise the same issue—whether the Bank's mortgage is a valid preferred ship mortgage—the Court will consider the motions together.

The Ship Mortgage Act is an integral part of maritime law.[43] Before the passage of the Ship Mortgage Act, a mortgage on a vessel was practically worthless because the enforcement of the mortgage was not a maritime matter that could be litigated in admiralty jurisdiction.[44] In response to this problem, Congress passed the Ship Mortgage Act, which provides for a "preferred ship mortgage" that creates a maritime lien against the mortgaged vessel.[45] The Ship Mortgage Act is designed to "stimulate private investment in U.S. Shipping and to protect the United States as the principal source of

---

[41] *Id.*

[42] R. Doc. 60.

[43] *See The Thomas Barlum*, 193 U.S. 21, 38–42 (1934).

[44] *Id.*; *see also* 1 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 9-5 (5 ed. 2011) ("Such mortgages could be created under state law and enforced in state court, but since the mortgages did not enjoy the status of a lienholder under federal maritime law, the security of a state law mortgage was often worthless."). Before the passage of the Ship Mortgage Act, vessel mortgage liens could not be enforced in admiralty court, and state-court enforcement was ineffective because state courts could not affect maritime liens, providing unsatisfactory protection of a ship mortgagee's security interest. *Thomas Barlum*, 293 U.S. at 39. Before the enactment of the Ship Mortgage Act, "ship mortgages were not entitled to enforcement by maritime liens and were subordinate to all of the many maritime liens a ship might incur." *Governor & Co. of Bank of Scotland v. Sabay*, 211 F.3d 261, 270 (5th Cir. 2000).

[45] SCHOENBAUM, at § 9-5.

credit."[46] "The primary purpose of the Ship Mortgage Act is to induce private capital to invest in shipping" and to "create 'certainty in financing' vessels of the United States."[47]

In enacting the Ship Mortgage Act, Congress recognized the need for "exclusive jurisdiction of the admiralty court and uniformity of procedure in ship mortgage foreclosure proceedings."[48] As a result, although state law may supplement maritime law, "it must yield when it interferes with [the Ship Mortgage Act's goals of] harmony and uniformity, or where it would defeat reasonably settled expectations of maritime actors."[49] Leaving each state to decide whether a mortgage is valid under the Ship Mortgage Act disrupts uniformity in maritime law by interfering with maritime actors' settled expectations.[50]

The Ship Mortgage Act defines a preferred ship mortgage as one that "(1) includes the whole of the vessel; (2) is filed in substantial compliance with [46 U.S.C. § 31321]; [and] (3) covers a documented vessel . . . ."[51] Section 31321 requires that a preferred ship mortgage:

(1) identify the vessel;

(2) state the name and address of each party to the instrument;

(3) state, if a mortgage, the amount of the direct or contingent obligations . . . that is or may become secured by the mortgage, excluding interest, expenses, and fees;

(4) state the interest of the grantor, mortgagor, or assignor to the vessel;

---

[46] *Seattle First Nat'l Bank v. Bluewater P'ship*, 772 F.2d 565, 569 (9th Cir. 1985); *see also Bank of the Pac. v. F/V ZOEA*, No. 3:15-CV-05758, 2017 WL 823298, at *2 (W.D. Wash. Mar. 2, 2017) (The Ship Mortgage Act "promotes investments in ships by facilitating vessel financing and by establishing the priority of preferred ship mortgages in relation to other liens. It was passed to stimulate private investment in U.S. shipping and to protect the United States as a principal source of credit.").

[47] *Chancery Nat'l Bank v. Blue Eagle*, 697 F. Supp. 1160, 1161 (W.D. Wash. 1988) (quoting *In re Alberto*, 823 F.2d 712, 719 (3d Cir. 1987)).

[48] *J. Ray McDermott & Co. v. Vessel Morning Star*, 457 F.2d 815, 817 (5th Cir. 1972).

[49] *F/V ZOEA*, 2017 WL 823298, at *2 (citing *Am. Dredging Co. v. Miller*, 510 U.S. 443, 447 (1994) and *Persson v. Scotia Prince Cruises, Ltd.*, 330 F.3d 28, 32 (1st Cir. 2003)).

[50] *F/V ZOEA*, 2017 WL 823298, at *2.

[51] 46 U.S.C. § 31322.

(5) state the interest sold, conveyed, mortgaged, or assigned; and

(6) be signed and acknowledged.[52]

Preferred ship mortgages recorded with the United States Coast Guard have priority over other types of maritime loans.[53]

When one of the elements necessary to establish a preferred ship mortgage for the purposes of the Ship Mortgage Act is questioned, courts may look to state law as persuasive authority in determining the issue.[54] However, as the Fifth Circuit stated in *J. Ray McDermott v. The Vessel Morning Star*, when no void exists in the statutory scheme, it is not necessary to turn to state law, as "to engraft the various nuances of state law onto federal legislation would introduce an undesirable lack of uniformity in the interpretation of Congressional enactments and would impede the harmony and uniformity sought by the [Ship Mortgage] Act."[55] The Ninth Circuit in *Seattle First National Bank v. Bluewater Partnership* held—in light of the Ship Mortgage Act's principle of uniformity—"[s]hip mortgages will not lose their preferred status where minor discrepancies exist. Substantial compliance with the Act's requirements is sufficient."[56]

Although the Defendants have not disputed that the mortgage satisfies requirements 1, 2, 4, 5 and 6 of Section 31321, they do contend that the third requirement has not been met because the mortgage does not state the amount of the direct or contingent obligation that is or may be secured by the mortgage. There is no dispute that

---

[52] 46 U.S.C. § 31321(b).
[53] *See* 46 U.S.C. § 31321.
[54] *Southland Fin. Corp. v. Oil Screw Mary Evelyn*, 248 F. Supp. 520, 522 (E.D. La. 1965) ("There is no Federal law of mortgages except such as is contained in specific statutes such as the Ship's Mortgage Act. Where voids appear, it is necessary for the Court to look to other sources for its answers. While the Federal Court may not be bound by State law in such an instance, nevertheless, the State law is the logical place to look for guidance. Uniformity is to be desired in matters maritime, but a starting point is required before uniformity can be achieved.").
[55] *J. McDermott*, 457 F.2d at 818.
[56] *Seattle First Nat'l Bank*, 772 F.2d at 570; *see also Chancery Nat'l Bank*, 697 F. Supp. at 1161 (finding a technical error immaterial and therefore insufficient to disqualify the mortgage for preferred status).

the Ship Mortgage Act allows a vessel to be mortgaged to secure present indebtedness as well as future advances.[57] The Ship Mortgage Act simply requires that a preferred ship mortgage include the amount that "is *or may become* secured by the mortgage."[58] In *Stewart & Stevenson Services, Inc. v. M/V Chris Way MacMillan*, the court held that a mortgage which, on its face, secured a maximum indebtedness of $3,000,000 was a valid preferred ship mortgage under the Ship Mortgage Act, even though the debt actually owed was considerably less than $3,000,000.[59] Like the mortgage in *Stewart & Stevenson*, the mortgage executed by Guilbeau Boat Rentals, LLC clearly states the maximum amount that may be secured by the mortgage is $900,000.[60] The fact that the actual debt owed is less does not disqualify the mortgage under the Ship Mortgage Act. The third requirement of Section 31321 is therefore satisfied.

The Defendants in effect contend that, even if all six requirements are met, the Ship Mortgage Act imposes an additional requirement for the mortgage to be valid—that the underlying mortgage be valid under the law of the state in which it was executed.[61] After conducting a thorough review of the language of the Ship Mortgage Act, applicable case law, and numerous secondary sources, the Court finds no such requirement.

The Ship Mortgage Act itself includes no requirement that a mortgage on a U.S.-registered vessel be valid under the law of a particular state for it to be considered a preferred ship mortgage. In contrast, in defining "preferred mortgage" on a *foreign* vessel for the purposes of the Ship Mortgage Act, the drafters specifically provided that a

---

[57] *See* R. Doc. 79; 46 U.S.C. § 31321(b) (a preferred ship mortgage must state the amount "that is or may become secured by the mortgage"); *Stewart v. Stevenson Servs., Inc. v. The M/V Chris Way Macmillan*, 890 F. Supp. 552 (N.D. Miss. 1995).
[58] 46 U.S.C. § 31321(b) (emphasis added).
[59] *Stewart*, 890 F. Supp. at 557–58.
[60] R. Doc. 1-4 at 1.
[61] R. Doc. 60-1 at 2–3. The Defendants have cited no cases to support their contention that the Ship Mortgage Act requires a mortgage to be valid under state law to qualify as a preferred ship mortgage.

preferred ship mortgage on a foreign vessel is one that "*was executed under the laws of the foreign country* under whose laws the ownership of the vessel is documented and has been registered under those laws in a public register . . . ."[62] "When Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."[63] Had Congress intended to require that a mortgage on a ship registered in the United States be validly executed under the laws of a particular state in order to qualify as a preferred ship mortgage, the Court must presume Congress would have explicitly done so.

Further, the cases cited by the Defendants are distinguishable from the instant case. In the cases cited by the Defendants, courts were faced with the question of whether the various requirements of Section 31321(b) were met. The courts looked to state law as a guide to resolve the dispute because the Ship Mortgage Act did not provide guidance. For instance, in *ITT Industrial Credit Company v. M/V Richard C*, there existed a dispute with respect to whether the mortgagor was the owner of the vessel that was the subject of the preferred vessel mortgage.[64] Because a preferred ship mortgage is required by Section 31321 to state the interest of the mortgagor of the vessel, and because the Ship Mortgage Act does not define ownership, the *ITT Industries* court turned to Louisiana law to determine whether the mortgagor was the owner of the vessel.[65]

The Bank's mortgage meets each of the six requirements of Section 31321 and is a valid preferred ship mortgage under the Ship Mortgage Act. The Court need not

---

[62] 46 U.S.C. § 31301(6)(B) (emphasis added).

[63] *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)) (internal quotation marks omitted).

[64] 617 F. Supp. 761 (E.D. La. Sept. 13, 1985).

[65] *Id.* at 764 ("[T]he issue of ownership . . . affect[s] the right of ITT to proceed against the vessel as security for its debt.").

determine whether the mortgage would be a valid collateral chattel mortgage under Louisiana law, as this is not a requirement under the Ship Mortgage Act.[66] Accordingly, the Defendants' motion to dismiss for lack of subject-matter jurisdiction is denied. The Court has federal question admiralty jurisdiction pursuant to 46 U.S.C. § 31325(c).

## CONCLUSION

**IT IS ORDERED** that the motion to dismiss for lack of subject-matter jurisdiction filed by defendants Guilbeau Boat Rentals, LLC, individually, *in personam*, and as owner and claimant of the vessel M/V NOONIE G, *in rem*, and Todd Guilbeau, Anthony Guilbeau, Jr. and Lorraine Guilbeau,[67] is **DENIED**.

**IT IS FURTHER ORDERED** that the motion for summary judgment filed by plaintiff South Lafourche Bank & Trust Co.[68] is **GRANTED IN PART** and **DEFERRED IN PART**. The Bank's request for a declaration that the first preferred mortgage dated August 14, 2007 is a valid and subsisting lien upon the Oil Screw M/V NOONIE G, Official Number 620862, her engines, tackle, apparel, etc., and all other necessaries thereunto belonging and appertaining as described in said preferred mortgage described prior and superior to the interests, liens or claims of any and all persons, firms or corporations whatsoever is **GRANTED**. The Court defers ruling as to all remaining relief requested by the Bank.

**New Orleans, Louisiana, this 19th day of June, 2017.**

_Susie Morgan_
_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[66] The Court does not decide the validity of collateral mortgages on movable property after 1990, when Louisiana adopted the Uniform Commercial Code Article 9.

[67] R. Doc. 60.

[68] R. Doc. 59.